UNITED STATES DISTRICT COURT                    ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PACE INDUSTRY UNION-MANAGEMENT
PENSION FUND, and its Trustees:
STAN JOHNSON, GARY BEEVERS,
JON GEENEN, JAMES KIDDER, RON HACKNEY,
DALE OLSON, TIM SUDELA, and
LISA SILVERMAN,                                 MEMORANDUM AND ORDER
                                                10-CV-2387 (JG)(JMA)

                        Plaintiffs,

            -against-

STANLEY G. SINGER,

                        Defendant.
-------------------------------------------------------------x

A P P E A R A N C E S :

        ALEXANDRA A. TSIROS
                David Tykulsker & Associates
                161 Walnut Street
                Montclair, NJ  17142

        ADAM C. WEISS
                Milman Labuda Law Group PLLC
                3000 Marcus Avenue, Suite 3W8
                Lake Success, NY  11042


JOHN GLEESON, United States District Judge:

            Plaintiff PACE Industry Union-Management Pension Fund, an ERISA-governed

multi-employer pension plan, and its trustees, the Fund's sponsors and fiduciaries (collectively,

"PACE" or the "Fund"), bring suit against Stanley G. Singer under the Multiemployer Pension

Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461.  Singer has moved for

judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), alleging that the six-year statute of

limitations imposed by the MPPAA, to which the Fund's claims are subject, has expired.  Singer

has also moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, the motion for judgment on the pleadings is granted in part and denied in part, and the motion to dismiss for lack of personal jurisdiction is denied.

BACKGROUND

The facts of this case date back to 2003, when York Display Finishing Co. ("York"), a New York general partnership and an employer who participated in the Fund, effected a "complete withdrawal" from the Fund. (Am. Compl. ¶ 21.) *See* 29 U.S.C. § 1381(b)(2). The MPPAA requires employers who withdraw from underfunded multiemployer pension plans to pay a sum of money as "withdrawal liability." 29 U.S.C. § 1381(a). An employer may discharge that obligation by making a series of periodic payments according to a post-withdrawal schedule set by the pension fund's trustees, or it may prepay the entire debt at any time. *Id.* §§ 1399(c)(2), (c)(3). By withdrawing from the Fund, York became subject to withdrawal liability. (Am. Compl. ¶ 22.)

On April 28, 2003, shortly after withdrawing from the Fund, York filed for bankruptcy protection in this district.[1] (*See* Weiss Reply Dec., Exh. A, at 2.) Subsequently, on September 23, 2003, the Fund notified York of its withdrawal liability by filing a proof of claim with the bankruptcy court. (Am. Compl. ¶ 23.) In its notification, the Fund laid out the payment plan that would govern York's ongoing obligations to the Fund, setting its monthly repayment at $4497.48 per month over the course of the next 20 years. The total amount of withdrawal liability was $1,619,569.00. (*Id.* ¶ 24.) Neither York nor any of its general partners has ever made a payment on York's liability to the Fund. (*Id.* ¶ 26.)

---

[1]	The bankruptcy case filed by York was closed on December 21, 2010. *In re York Display Finishing Co., Inc.*, 03-BR-15308 (Bankr. E.D.N.Y. Dec. 21, 2010) (Docket No. 47).

On January 21, 2005, after 14 monthly payments had been missed, the Fund notified York that it had failed to meet its obligations under the withdrawal liability payment plan, and informed it that if it failed to cure within 60 days the Fund would declare a default. (*Id.* ¶ 25.)  York did not cure, and it thereby defaulted on its obligations to the Fund.  (*Id.* ¶ 30; *see* Opp. at 12 & n.2)

On October 26, 2006, the Fund filed suit against Kent 240, a partnership in common control with York, in the United States District Court for the Middle District of Tennessee.  *PACE Indus. Union Mgmt. Pension Fund v. Kent 240 Co.*, No. 06-cv-1045 (M.D. Tenn. filed 10/26/06) ("*PACE I*").  The suit argued that because Kent 240 and York have common ownership, Kent 240 was jointly and severally liable for York's withdrawal liability. (Am. Compl. ¶ 34.)  *See PACE I* (complaint).  The lawsuit was decided in favor of the Fund, and on March 27, 2008, the court entered judgment against Kent 240 for the withdrawal liability in the amount of $1,960,362.50.  (Am. Compl. ¶ 35.)  *See PACE I* (order and final judgment filed 3/26/2008).  Kent 240 has not made any payments to the Fund.

In the current action, the Fund argues that Singer, as a general partner of Kent 240, is personally liable for Kent 240's defaulted withdrawal liability pursuant to the judgment entered in the Middle District of Tennessee.  Singer, a Massachusetts resident, argues that (1) this Court has no personal jurisdiction over him, because he does not have sufficient minimum contacts with the state of New York, and (2) the entirety of the withdrawal liability became due and payable upon York's bankruptcy filing in 2003, and therefore any suit against Singer for that liability is barred by ERISA's and the MPPAA's six-year statute of limitations.  I heard oral argument on Wednesday, February 24th, and now grant Singer's motion in part and deny it in part.

DISCUSSION

A.    *Jurisdiction*

Singer alleges that he is not properly subject to personal jurisdiction in this district.[2]  For the reasons that follow, his argument fails.

A defendant must raise any objection to personal jurisdiction in his first Rule 12 motion or responsive pleading.  If an objection is not timely raised, it is waived.  Fed. R. Civ. P. 12(h)(1).  Once the defendant has raised an objection to personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999).  This burden is carried when a plaintiff makes a "prima facie showing that jurisdiction exists."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010).

The Fund initially argues that Singer has waived his right to object to personal jurisdiction because he did not include the objection in his initial pleading.  Singer responds that his general denial of the jurisdictional paragraphs in the Amended Complaint served as his required objection.  (*See* Reply at 8 n.2; Answer ¶ 2.)  Because, as discussed below, Singer's challenge to personal jurisdiction has no merit, I assume without deciding that this general denial was sufficient to preserve his objection to personal jurisdiction.  Courts in the Second Circuit have held that a contrary rule would "elevate form over substance" and lead to unjust results. *Boss Prods. Corp. v. Tapco Int'l. Corp.*, 2001 WL 135819, at *1 (W.D.N.Y. Feb. 16, 2001); *see also* Fed. R. Civ. P. 8(d) (requiring that all pleadings be "construed so as to do justice").

ERISA and the MPPAA provide for nationwide service of process.  29 U.S.C. §§ 1132(e)(2); 1451(d).  It is well established that a nationwide service of process statute provides

---

2    Singer also invokes Fed. R. Civ. P. 12(b)(1), dismissal for lack of subject matter jurisdiction, but includes no authority or argument as to why this Court does not have subject matter jurisdiction over this claim, which arises out of federal law.

personal jurisdiction over any defendant with minimum contacts with the United States as a whole. *See IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) ("[T]he district court has personal jurisdiction over the defendants insofar as the MPPAA includes a provision for nationwide service of process."); *In re Michaelesco*, 288 B.R. 646, 652 (D. Conn. 2003) ("A minimum contacts analysis with the forum state in which the district court sits is unnecessary because the sovereign exercising jurisdiction is the United States, not a particular state."). Minimum contacts with the United States can be satisfied by proving that a defendant works or resides in a state within the United States. *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974); *In re Michaelesco*, 288 B.R. at 652. Because plaintiffs have alleged personal jurisdiction over Singer pursuant to the nationwide service provisions of ERISA and the MPPAA (Am. Compl. ¶ 2), and because Singer has admitted that he is a resident of Massachusetts (Answer ¶ 6) and was served there (Mot. at 12), plaintiffs have made the requisite *prima facie* showing that Singer is subject to personal jurisdiction in this district. Singer's motion to dismiss this action for lack of personal jurisdiction is denied.[3]

B.  *The Sufficiency of PACE's Complaint*

In order to survive a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating the plaintiff's claim I construe the complaint

---

[3]        The final jurisdictional objection raised by Singer in his reply papers, in which he invokes 29 U.S.C. § 1132(e)(2), is not in fact a contest to personal jurisdiction, but to venue. A venue objection made for the first time in a moving party's reply papers is improper, and therefore I decline to consider it. *See* Fed. R. Civ. P. 12(h)(1)(B). Even if the objection were timely made, venue would be proper in this district because the breach took place here. Both York and Kent 240 were Brooklyn companies (Am. Compl. ¶¶ 3, 6), the work done under the contract with the PACE Industry Union was done in Brooklyn, the collective bargaining by which the union workers became employed by York was done in Brooklyn, and the bankruptcy action that resulted in York's liquidation was conducted in Brooklyn. *See In re Merck & Co., Inc., Sec., Derivative & ERISA Litig.*, 360 F. Supp. 2d 1375, 1377 (Jud. Pan. Mult. Lit. 2005) (venue was proper in district where documents would likely be located); *Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 212 (E.D.N.Y. 1996) (venue was proper "in the district where an employee performs his work," even though the plans were administered in another state).

liberally, accepting its allegations as true and drawing all reasonable inferences in favor of the

non-moving party. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Although

the complaint must be supported by more than "mere conclusory statements," *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009), it need not provide "detailed factual allegations." *Twombly*, 550

U.S. at 555.[4]

The issue at the crux of Singer's motion is whether the Fund filed this action

within the six-year statute of limitations imposed by ERISA. 29 U.S.C. § 1451(f). The parties

disagree as to the date on which the statute of limitations began to run -- Singer argues it began

running sometime in 2003 (apparently either when York withdrew from the Fund or when York

filed for bankruptcy), and the Fund contends it began running when the Fund accelerated York's

withdrawal liability on January 21, 2005.

The Supreme Court ruled on this precise issue in *Bay Area Laundry*, which

addressed the case of a petitioner who had "brought . . . suit more than six years after

respondents missed their first scheduled payment, but within six years of each subsequent missed

payment." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522

U.S. 192, 195 (1997) ("*Bay Area Laundry*"). Holding that "the statute of limitations does not

begin to run on withdrawal liability until a scheduled payment is missed," the Court determined

that "each missed payment creates a separate cause of action with its own six-year limitations

period." *Id.* Acceleration of the debt causes the statute of limitations to begin running for the

---

4   *Iqbal* and *Twombly* dealt with motions brought under Rule 12(b)(6) of the Federal Rules of Civil
Procedure, but a motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard.
*Hayden v. Paterson*, 594 F.3d 150, 157 n.4 (2d Cir. 2010); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

balance of the debt, *id.* at 209 n.5, but does not reset the limitations period for earlier missed payments, *id.* at 210.[5]

Applying *Bay Area Laundry* and accepting the facts pled by the Fund as true, I find that neither party is correct. The statute of limitations did begin to run on the day York first missed an installment payment. (*Cf.* Am. Compl. ¶ 25.) However, the statute of limitations applied only to that first payment. *Bay Area Laundry*, 522 U.S. at 196. Each subsequent missed payment commenced a separate six-year limitations period. The acceleration on January 21, 2005 started the statute of limitations on the balance of the debt that had not already accrued. *Id.* at 209 n.5. Therefore, the statute of limitations has run for the payments that were due more than six years before the filing of the complaint, but the balance of the payments remain due and payable.

Singer argues that by submitting a proof of claim in bankruptcy in 2003 the Fund effectively accelerated its claim. (Mot. at 6 (citing *I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc.*, 190 F.R.D. 324 (S.D.N.Y. Dec. 3, 1999)).) This case is not analogous to *I.L.G.W.U.*, the case Singer relies on. In *I.L.G.W.U.*, the plaintiffs and defendants had worked out an installment plan before the bankruptcy occurred. *I.L.G.W.U.*, 190 F.R.D. at 328. The plaintiffs filed their proof of claim in the bankruptcy action after a series of missed payments, which then accelerated all payments and demanded payment in full. *Id.* Unlike *I.L.G.W.U.*, the submission of a proof of claim in bankruptcy was not intended by the Fund to accelerate the debt, but to notify York that it would be held liable for the debt. (Am. Compl. ¶ 23.) *Cf. Ctrl. States, Se. & Sw. Areas*

---

[5] The Fund's argument that the acceleration restarted the statute of limitations period on the payments that had been missed up to that point is not supported by *Bay Area Laundry*. The *Bay Area Laundry* Court did mention that the congressional scheme underlying the MPPAA gives pension funds some degree of control over the statute of limitations that would apply to the repayment plan. *Bay Area Laundry*, 550 U.S. at 204. However, the Court was referring to the pension fund's time within which to calculate an employer's withdrawal liability and notify the employer of its obligation to repay the fund. *Id.* at 204-05. Accordingly, a pension fund can control the time at which the statute of limitations begins to run, but cannot control the statute of limitations once it has already begun to run. *See id.* at 210.

*Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 917 (7th Cir. 2001) (where terms of installment repayment plan were "permissive rather than mandatory," bankruptcy triggers plaintiff's *optional* ability to call a default, but "[m]erely filing for the protection of the bankruptcy court does not trigger a mandatory declaration of default). The proof of claim explicitly informed York that it was subject to an installment plan, not to an acceleration of a then-nonexistent payment plan. (Am. Compl. ¶ 24.) The installment plan was not accelerated until early 2005, well within the limitations period. The Fund's action is therefore timely, but only as to the payments that were due on or after May 26, 2004 -- six years before the complaint in this case was filed. The Fund's claims with regard to payments that became due prior to May 26, 2004 are dismissed.

## CONCLUSION

The defendant's motion to dismiss for lack of personal jurisdiction is denied. As discussed above, his motion for judgment on the pleadings is granted in part and denied in part.


So ordered.

John Gleeson, U.S.D.J.

Dated: March 8, 2011
      Brooklyn, New York